UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
JACKSON DIVISION

In Re:

Case No. 21-10080

Judy Chromizky,

Chapter 13

    Debtor

Judge Jimmy L. Croom

Carrington Mortgage Services, LLC
    Movant

v.

Judy Chromizky,
    Debtor/Respondent

Timothy H. Ivy
    Trustee/Respondent


## MOTION FOR RELIEF FROM AUTOMATIC STAY OF SECTION 11 U.S.C. §362 AND CODEBTOR STAY OF 11 U.S.C. §1301

COMES NOW Nationstar Mortgage LLC d/b/a Mr. Cooper as Servicer for U.S. Bank National Association, not in its individual capacity but solely as Trustee for the CIM TRUST 2021-NR2 Mortgage-Backed Notes, Series 2021-NR2, hereinafter "Nationstar Mortgage LLC d/b/a Mr. Cooper," by and through its attorneys, LOGS Legal Group LLP, and for its motion against Judy Chromizky, the Debtor herein, and Robert Chromizky (Co-Debtor) states the following:

1.    Nationstar Mortgage LLC d/b/a Mr. Cooper as Servicer for U.S. Bank National Association, not in its individual capacity but solely as Trustee for the CIM TRUST 2021-NR2 Mortgage-Backed Notes, Series 2021-NR2 is the servicer of the Deed of Trust (hereinafter "security instrument") and Note executed by Robert Chromizky on December 20, 2007, securing payment to American General Financial Services, Inc in the principal sum of $75,080.81. This

security instrument encumbers the real property located at 721 Westwood, Jackson, Tennessee 38301 ("the Property"). Copies of the security instrument and note are attached hereto and incorporated herein.

2.      The non-filing Co-Debtor, Robert Chromizky,  executed a promissory note secured by a Deed of Trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the Deed of Trust.

3.      The note and security instrument are in arrears for the installment due on March 4, 2021 and for each subsequent monthly installment due thereafter. The total payoff as of September 14, 2001 is $66,666.40.

4.      The subject loan is currently in default under said security instrument and note based on a failure to make the full regular monthly installment payments thereon, and, in addition to the principal balance in the amount of $56,744.85, due as of September 14, 2021, interest is owed thereon at the rate of 10.88% per annum along with applicable late charges. Movant may also be entitled to reasonable attorney's fees along with other recoverable fees and costs as set forth in the security instrument.

5.      As of September 14, 2021, the loan is post-petition due for the March 4, 2021 payment, thus indicating that the Debtor is not meeting the payment obligations to Movant. Movant would affirmatively allege that the debtors are in default under the provisions of the plan. At the current rate and number of payments, Debtors will not cure the arrearage which is owed to Movant and will only fall further behind, thus making the Chapter 13 plan no longer feasible.

6.      As of September 14, 2021, the estimated total payoff is $66,666.40.

7.      According to the Debtor's Schedule A the Property has a value of 66,100.00.

8.     The material default of the Debtor entitles Movant to relief pursuant to Section 362(d)(1) and Codebtor Stay of Section 1301(a) of the Bankruptcy Code for cause shown including, but not limited to, lack of adequate protection.

9.     The Debtor is failing to provide Movant with adequate protection of its interest in the Property by failing to maintain the Note payments to Movant. Therefore, the Court should grant Movant relief from the automatic stay to allow Movant to exercise its state law remedies, including foreclosure against the Property and, if appropriate, to file an unsecured claim in this proceeding.

10.     In the event that relief is not granted, Movant requests that the Court enter an Order for the Debtor(s) to strictly comply with the plan payments for the life of the Chapter 13 plan.

11.     Movant requests that Rule 4001(a)(3) not apply to this Motion, thus permitting it to immediately enforce and implement an order granting relief from the automatic stay.

WHEREFORE, Movant prays that it be granted relief from the automatic stay pursuant to 11 U.S.C. §362 and 11 U.S.C. §1301; that it be allowed to initiate foreclosure proceedings against the real property securing the security instrument and note; that in the event relief is not granted, the Court enter an Order for the Debtor to strictly comply with the plan payments for the life of the plan; for its costs and attorney's fees herein; and for all other just and proper relief.

Respectfully submitted,

/s/ Michael G. Clifford

Bonnie S. Culp, TN Bar No: 014741
Michael G. Clifford, TN Bar No: 028691
LOGS Legal Group LLP
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
(704) 333-8107
bculp@logs.com | (704) 249-0065

mclifford@logs.com   | (704) 608-9374
Electronic Service Notifications: logsecf@logs.com

**Standing Statement**

Nationstar Mortgage LLC d/b/a Mr. Cooper as Servicer for U.S. Bank National
Association, not in its individual capacity but solely as Trustee for the CIM TRUST
2021-NR2 Mortgage-Backed Notes, Series 2021-NR2 ("Movant"), directly or through an
agent, has possession of the original promissory note. The promissory note either is made
payable to Movant or the note has been duly endorsed to a predecessor of Movant.
Movant is the current beneficiary of the Deed of Trust securing the referenced loan.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
JACKSON DIVISION

In Re:                                          Case No. 21-10080

Judy Chromizky,                                 Chapter 13

     Debtor                                    Judge Jimmy L. Croom

Carrington Mortgage Services, LLC
     Movant

v.

Judy Chromizky,
     Debtor/Respondent

Timothy H. Ivy
     Trustee/Respondent

**CERTIFICATE OF SERVICE**

     I hereby certify that I have this day served the Motion for Relief from Automatic Stay upon:

(Served via U.S. Mail)
Judy Chromizky
721 Westwood Ave
Jackson, TN 38301


(Served via U.S. Mail)
Robert Chromizky
721 Westwood Ave
Jackson, TN 38301


(Served via Electronic Notification Only)
T. Verner Smith
Law Office of Verner Smith
367-A N. Parkway
Ste. 1
Jackson, TN 38305

(Served via Electronic Notification Only)
Timothy H. Ivy
P.O. Box 1313
Jackson, TN 38302-1313

This the 24th day of September , 2021.


/s/ Michael G. Clifford
_____
Bonnie S. Culp, TN Bar No: 014741
Michael G. Clifford, TN Bar No: 028691
LOGS Legal Group LLP
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
(704) 333-8107
bculp@logs.com | (704) 249-0065
mclifford@logs.com   | (704) 608-9374
Electronic Service Notifications: logsecf@logs.com
21-121426

(Page 2 of 26)

Cop

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**

**AMERICAN**
**GENERAL**
FINANCIAL SERVICES

| DATE  12/20/07 | ACCOUNT NUMBER ███ | TYPE OF LOAN (Alpha)  H00 |
|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER ███ |
|---|---|

AMERICAN GENERAL FINANCIAL SERVICES, INC
1725 S HIGHLAND AVE STE B
JACKSON, TN 38301-7767

**BORROWER(S) NAME AND ADDRESS ("I","We")**

ROBERT CHROMIZKY
721 WESTWOOD
JACKSON, TN 38301

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 11.47 % | $    112450.23 | $    72252.81 | $    184703.04 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 947.89  * | 02/04/08 |
| 239 | $ 768.85  * | monthly beginning 03/04/08 |

* The payment above does not include the monthly insurance premium.

LATE CHARGE: [X] If any payment is not paid in full within __5__ days after its due date, I will be charged __5.00__% of the _unpaid_ amount of the payment, but not more than $ _N/A_ or less than $ _N/A_.

[ ] If any payment is not paid in full within _____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

PREPAYMENT: If I pay off early:

[X] I may   [ ] I will not   have to pay a penalty or minimum charge.

[ ] I may   [X] I will not   get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

[X] Real estate located at:  721 WESTWOOD
JACKSON, TN 38301

| | Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|---|
| [ ]<br>Motor<br>Vehicles | | | | |

| | Other Assets Description |
|---|---|
| [ ]<br>Other<br>Assets | |

[ ] Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION:  Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature.  Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_Robert Chromizky_
Borrower

_____
Co-Borrower

**SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES**

UNAA91 (01-15-06) Agreement (1-2)          Page 1

(Page 3 of 26)

'Cop.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| Amounts paid to others on my behalf | | |
| 1. $ NONE | | PAID TO |
| 2. $ NONE | | PAID TO |
| 3. $ NONE | | PAID TO |
| 4. $ NONE | | PAID TO |
| 5. $ NONE | | PAID TO |
| 6. $      165.00 | Title Examination Fee | PAID TO DATA SEARCH |
| 7. $ NONE | | PAID TO |
| 8. $      405.00 | Appraisal Fee | PAID TO DATA SEARCH |
| 9. $ NONE | | PAID TO |
| 10. $ NONE | | PAID TO |
| 11. $ NONE | | PAID TO |
| 12. $ NONE | | PAID TO |
| 13. $      180.00 | Title Insurance Fee | PAID TO DATA SEARCH |
| 14. $ NONE | | PAID TO |
| 15. $ NONE | | PAID TO |
| 16. $      102.81 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. $ NONE | | PAID TO |
| 18. $ NONE | | PAID TO |
| 19. $ NONE | | PAID TO |
| 20. $ NONE | | PAID TO |
| 21. $     2095.55 | | PAID TO ROBERT CHROMIZKY AND AGF 22083835 |
| 22. $    18741.00 | | PAID TO ROBERT CHROMIZKY AND INDEPENDENCE |
| 23. $     3469.00 | | PAID TO ROBERT CHROMIZKY AND KAY |
| 24. $     5684.00 | | PAID TO ROBERT CHROMIZKY AND CAP ONE |
| 25. $     5020.00 | | PAID TO ROBERT CHROMIZKY AND BANCORP |
| 26. $     2042.00 | | PAID TO ROBERT CHROMIZKY AND SEARS |
| 27. $      359.00 | | PAID TO ROBERT CHROMIZKY AND KOHL |
| 28. $    28507.89 | | PAID TO ROBERT CHROMIZKY AND FIRST TN |
| 29. $ | | PAID TO |
| 30. $ | | PAID TO |
| 31. $ | | PAID TO |
| 32. $ | | PAID TO |
| 33. $ | | PAID TO |
| 34. $ | | PAID TO |
| 35. $ | | PAID TO |
| 36. $ | | PAID TO |
| 37. $ | | PAID TO |
| 38. $ | | PAID TO |
| 39. $ | | PAID TO |
| 40. $ | | PAID TO |
| 41. $ | | PAID TO |
| 42. $ | | PAID TO |
| 43. $ | | PAID TO |
| 44. $ | | PAID TO |
| 45. $ | | PAID TO |
| Amount Paid on Prior Account with Lender | | |
| 46. $ NONE | | |
| Amounts Paid to me | | |
| 47. $     5481.56 | | PAID TO ROBERT CHROMIZKY |
| 48. $ | | PAID TO |
| 49. $ | | PAID TO |
| 50. $ | | PAID TO |
| 51. $ | | PAID TO |
| 52. $ | | PAID TO |
| 53. $ | | PAID TO |
| 54. $ | | PAID TO |
| 55. $ | | PAID TO |
| 56. $ | | PAID TO |
| $    72252.81 | Amount Financed (Sum of lines 1 - 56) | |
| $     2828.00 | Prepaid Finance Charges (itemized below) | |

| PREPAID FINANCE CHARGES | | |
|---|---|---|
| 1. $     2769.00 Points | | PAID TO  LENDER |
| 2. $ NONE | | PAID TO |
| 3. $ NONE | | PAID TO |
| 4. $ NONE | | PAID TO |
| 5. $ NONE | | PAID TO |
| 6. $ NONE | | PAID TO |
| 7. $ NONE | | PAID TO |
| 8. $ NONE | | PAID TO |
| 9. $ NONE | | PAID TO |
| 10. $ NONE | | PAID TO |
| 11. $ NONE | | PAID TO |
| 12. $ NONE | | PAID TO |
| 13. $ NONE | | PAID TO |
| 14. $ NONE | | PAID TO |
| 15. $       59.00 Tax Service Fee | | PAID TO  ZC Sterling |

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**

:                                                                              **Cop**

### ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot request that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

### ARBITRATION RULES AND PROCEDURES.

**A.    ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.    SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.    STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.    COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.    CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

### SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

UNBA31 (1-16-05) Agreement (3-4)                     Page 3                     Initials *R C* _____

·Cop.

**ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)**

**F. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G. LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H. LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I. LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J. ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K. FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d) This Arbitration Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

. .   :

**Cop**

**DATE OF LOAN.** 12/27/07  (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.**                10.88  % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index plus a margin. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index. The Contract Rate and the monthly payment amounts may change as set forth herein.
Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.
My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.
The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property") is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and subject to any modifications, renewals, extensions, and future advances thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of cancellation or expiration of the Required Insurance, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) attain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

**SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

UNATG1 (10-14-07) Agreement (5-6)                                  Page 5                                            Initials _R C_  _____

(Page 7 of 26)

· Cop

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

A.  I fail to make any payment under this Agreement when due.

B.  I fail to do anything else I have agreed to do in this Agreement.

C.  Any statement or representation I made in my credit application is untrue or incorrect.

D.  I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.

E.  I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

F.  Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

G.  Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.

H.  If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.

I.  I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

J.  Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A.  Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

B.  Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.

C.  If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

D.  If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.

E.  Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

F.  If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.

G.  Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

H.  Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement. Taxes and insurance costs can be substantial.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

UNATG2 (10-14-07) Agreement (5-6)                    Page 6                    Initials  _____

Cop

**INTEREST BEARING LOAN.** I agree to pay Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☐ **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender, on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time, subject to the payment of the penalty (if any) described below. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

**PREPAYMENT PENALTY.**

☐ If checked, there will be no prepayment penalty.

☒ If checked, Lender may charge and I agree to pay a prepayment penalty equal to ___5.0__%, computed on the Principal prepaid at any time within the first __60__ months after the Date of Agreement. There will be no prepayment penalty if: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) this loan is prepaid with insurance proceeds; (c) this loan is prepaid as a result of lawsuit or foreclosure; (d) Lender disapproves an assumption of this Agreement and exercises a due on sale clause, and the prepayment penalty is prohibited by applicable law; or (e) this loan is prepaid within __60__ months after the Date of Agreement.

**LATE CHARGE.** If any payment is not paid in full within ___5__ days after its due date, I will be charged _5.00_% of the _unpaid_ amount. Maintenance fee is excluded from late charge calculations.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $ _20.00_.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the State of Tennessee shall govern this Agreement, except as preempted by federal law.

**PLEASE SEE IMPORTANT INFORMATION ON REVERSE**

(Page 9 of 26)

·Cop

**ENTIRE AGREEMENT.** This Agreement, which includes the Insurance Disclosure Summary, if one was provided to you, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein.  This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties.  All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.**

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.**
> UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x _Jauanika Webmier_       x _Richard Chromizky_       L.S.
  Witness                                      Borrower  ROBERT CHROMIZKY

x _____       x _____       L.S.
  Witness                                       Co-Borrower

                                             x _____       L.S.
                                             Co-Maker
                                             Print Name: _____

                                             x _____       L.S.
                                             Co-Maker
                                             Print Name: _____

Copy

## NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART
OF THE NOTE TO WHICH IT IS ATTACHED.

| | |
|---|---|
| Borrower 1: | ROBERT  CHROMIZKY |
| Borrower 2: | |
| Date of Loan: | 12/27/2007 |
| Loan Amount: | $75,080.81 |
| Property Address: | 721 WESTWOOD |
| City, State, Zip: | JACKSON, TN 38301 |

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL
SERVICES, INC

Stephen L. Day
Vice President

WB1                              546                              14

**Cop**

AMERICAN GENERAL FINANCE INC.
1725 S HIGHLAND AVE STE B
JACKSON TN  38301-7767

### DEED OF TRUST WITH ASSIGNMENT OF RENTS

THIS     DEED     OF     TRUST,     made     on     __12/20/07__,     between
__ROBERT CHROMIZKY AND JUDY CHROMIZKY, A MARRIED COUPLE__

__SPOUSES_____hereinafter jointly and severally designated Grantor, party for the first part, and
__JESSE FORD III_____, Trustee, party of the second part. Maximum principal
indebtedness for Tennessee recording tax purposes is $___75080.81_.

WITNESSETH: Grantor does hereby convey unto the party of the second part, in trust, the following
described Real Estate, to-wit--

SEE EXHIBIT " A "

BUT THIS CONVEYANCE IS MADE UPON THE FOLLOWING TRUST:
To     secure     to     the     order     of     the     Beneficiary,
__AMERICAN GENERAL FINANCIAL SERVICES, INC_____
_____, the payment of the sum of ($___75080.81_)
__SEVENTY-FIVE THOUSAND EIGHTY DOLLARS AND EIGHTY-ONE CENTS_____
_____, evidenced by Note/Loan Agreement of even date herewith
executed by Grantor in favor of the Beneficiary, (herein "Note"), together with interest thereon as provided in said
Note(s).

This Deed of Trust secures any renewals of the above Note, and all other indebtedness owing to the
Beneficiary, whether now existing or hereafter created, whether contingent or noncontingent, direct or indirect,
and whether owing by one or all of the Grantors herein.

Grantor also assigns to Beneficiary, all rents, issues and profits of said premises, reserving the right to
collect and use the same, with or without taking possession of the premises, during continuance of default
hereunder, and during continuance of such default authorizing Beneficiary, to enter upon said premises and/or to
collect and enforce the same without regard to adequacy of any security for the indebtedness hereby secured by
any lawful means.

And said Grantor agrees to keep the buildings on said Real Estate insured in some solvent company to be
approved by said Trustee or the holder of said Note in at least the sum of the debt secured hereby which policy
shall be assigned by standard mortgage clause for the benefit of the debt herein secured.

And as to the debt secured by this Deed of Trust, said Grantor hereby expressly waives the benefit of the
right of equity of redemption, homestead, and all other exemptions.

And said Grantor covenants to promptly pay for all insurance on said Real Estate and all taxes and
assessments on the same, and should Grantor fail to insure the same or to pay the insurance, or any taxes and
assessments, then said Trustee or the holder of the said Note may, at their option, take out such insurance and
pay for same, and pay any taxes and assessments as the same shall become due, and any sum so paid shall
take interest from the day of payment, become a part of the debt secured by this Deed of Trust and be due and
payable with the first or next ensuing installment of interest due hereunder.

Grantor may elect to have Beneficiary maintain an escrow fund for payment of real estate taxes,
assessments, insurance premiums, or other obligations that might encumber the Real Estate if not timely paid
when due.  If Grantor so elects, Grantor shall pay to Beneficiary on the day Monthly Payments are due under the
Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and
assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the
Real Estate; (b) leasehold payments or ground rents on the Real Estate, if any; (c) premiums for any and all
insurance required by Beneficiary, including, but not limited to Hazard Insurance and Flood Insurance; and (d)
Mortgage Insurance premiums, if any, or any sums payable by Grantor to Beneficiary in lieu of the payment of
Mortgage Insurance premiums.  These items are called "Escrow Items."  At origination or at any time during the
term of the Loan, Beneficiary may require that Community Association Dues, Fees, and Assessments, if any, be
escrowed by Grantor, and such dues, fees and assessments shall be an Escrow Item.  Grantor shall promptly
furnish to Beneficiary all notices of amounts to be paid under this Section.  Grantor shall pay Beneficiary the
Funds for Escrow Items unless Beneficiary waives Grantor's obligation to pay the Funds for any or all Escrow
Items.  Beneficiary may waive Grantor's obligation to pay Beneficiary Funds for any or all Escrow Items at any
time.  Any such waiver may only be in writing.  In the event of such waiver, Grantor shall pay directly, when and
where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by
Beneficiary and, if Beneficiary requires, shall furnish to Beneficiary receipts evidencing such payment within such
time period as Beneficiary may require.  If Grantor is obligated to pay Escrow Items directly and fails to do so,
Beneficiary may pay such amount and Grantor shall then be obligated to repay to Beneficiary any such amount.
Beneficiary may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with
the notice provision of this Deed of Trust and, upon such revocation, Grantor shall pay to Beneficiary all Funds,
and in such amounts, that are then required under this or other applicable Sections.

TNA451 (10-17-04) Real Estate Deed of Trust





Beneficiary may, at any time, collect and hold Funds in an amount (a) sufficient to permit Beneficiary to apply the Funds at the time specified under the federal Real Estate Settlement Procedures Act and implementing regulations (collectively, "RESPA") and (b) not to exceed the maximum amount a Beneficiary can require under RESPA. Beneficiary shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Beneficiary shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Beneficiary shall not charge Grantor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Beneficiary pays Grantor interest on the Funds and Applicable Law permits Beneficiary to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Beneficiary shall not be required to pay Grantor any interest or earnings on the Funds. Grantor and Beneficiary can agree in writing, however, that interest shall be paid on the Funds. Beneficiary shall give to Grantor, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Beneficiary shall account to Grantor for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Beneficiary shall notify Grantor as required by RESPA, and Grantor shall pay to Beneficiary the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Beneficiary shall notify Grantor as required by RESPA, and Grantor shall pay to Beneficiary the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed of Trust, Beneficiary shall promptly refund to Grantor any Funds held by Beneficiary.

If this Deed of Trust is subject and subordinate to another Deed of Trust, it is hereby expressly agreed that should any default be made in the payment of any installment of principal or of interest on said prior Deed of Trust, the holder of this Deed of Trust may pay such installment of principal or such interest and the amounts so paid with legal interest thereon from the time of such payment may be added to the indebtedness secured by this Deed of Trust and shall be deemed to be secured by this Deed of Trust, and it is further expressly agreed that in the event of such default or should any suit be commenced to foreclose said prior Deed of Trust then the amount secured by this Deed of Trust and the accompanying Note shall become and be due and payable at any time thereafter at the sole option of the owner or holder of this Deed of Trust.

If not prohibited by law or regulation, this Deed of Trust and all sums hereby secured shall become due and payable at the option of Beneficiary and without notice to Grantor forthwith upon the conveyance of Grantor's title to all or any portion of said mortgaged Real Estate and premises, or upon the vesting of such title in any manner in persons or entities other than, or with, Grantor unless the purchaser or transferee assumes the indebtedness secured hereby with the consent of the Beneficiary.

If default be made in payment of any portion of said principal sum when due or in the payment of any interest or sum paid for insurance, taxes or assessments, as the same shall respectively fall due, thereupon, all of the debt herein secured shall, forthwith, become due at the option of the holder of said Notes and said Trustee, upon being requested so to do by the holder of said Notes and after publishing the time, place and terms of sale once each week for three (3) consecutive weeks in a newspaper published in the county in which said Real Estate is situated, the first of which publications shall be at least twenty (20) days previous to the sale, shall proceed hereby conveyed at public sale on the premises or at such place as said Trustee may deem most beneficial to the Trust, for cash in hand and in bar of the right of equity of redemption, statutory right of redemption, homestead, and all other exemptions, all of which are hereby expressly waived.

Said Trustee shall apply the proceeds of such sale as follows:

(1)   To the payment of the costs of executing this Trust, including legal commission to said Trustee, upon the gross amount of said sale, which said costs and commission shall constitute a lien on said Real Estate and which shall accrue upon advertisement of same.
(2)   To the payment of the whole of said debt herein secured, principal and interest, and any sums paid for insurance, taxes or assessments.
(3)   To the payment of all taxes, assessments and insurance then due on said Real Estate and unpaid.
(4)   The residue, if any, shall be paid to the order of the Grantor.

In the event of the death, absence, inability or refusal of the Trustee to act at any time when action under the within powers may be required, the owner of the debt herein secured is hereby authorized to name or appoint a successor or successors to execute the within Trust, and the title herein conveyed to said Trustee shall be vested in said successor or successors; which appointment shall be in writing and duly acknowledged, and shall be recorded in the office of the Register of Deeds of the County in which the Real Estate is situated.

It is expressly understood and agreed that as to the covenants and warranties by the female Grantor herein contained, the same are made with reference to her separate estate as a source of credit.

It is the intention of this Deed of Trust to authorize, at the option of the holder of the debt herein secured, an immediate sale of said Real Estate and the collection of the whole of the principal of said debt and interest and any sum paid for insurance, taxes or assessments, upon default being made in the payment of any of said Notes or interest or sum paid for insurance, taxes or assessments as the same shall respectively become due and payable, either by the terms of said Notes or the provisions of this Deed of Trust, without regard to the date of maturity of any Notes or interest not then due designated herein. Should the debt herein be fully paid, then this Deed of Trust shall be released at the cost of said Grantor.

TNA452 (10-17-04) Real Estate Deed of Trust

(Page 14 of 26)

Cop

And the Grantor hereby covenants that Grantor has the right to convey said Real Estate; that Grantor has done no act to encumber the same; that in case of sale under this Deed of Trust the purchaser shall have quiet and peaceful possession of said Real Estate free from all encumbrances, and said Trustee is authorized to make a deed to the purchaser and immediately upon such sale, the Grantor shall become the tenant at will of the purchaser, and the Grantor conveys to execute such other and further assurances thereof as may be requisite, and in no case shall the purchaser, in case of sale, be required to look to the application of the purchase money.

The Grantor further agrees not to sell the Real Estate hereinbefore conveyed or to further encumber such property without the written consent of the Beneficiary. and further agrees not to abandon said property, and a breach of any of these agreements and conditions shall cause the entire indebtedness secured hereby to become due and payable at the option of the said Beneficiary or Beneficiary's assigns.

The Grantor has the right to anticipate said debt and interest thereon at any time.

Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

IN WITNESS WHEREOF, WITNESS the signature and seal of the Grantor hereunto affixed on the day and year herein written.

ATTEST:

_____          _____
TAMMY BOLEYN          Witness          ROBERT CHROMIZKY          Grantor

_____          _____
TAWANIKA MCKINNEY          Witness          JUDY CHROMIZKY          Grantor

STATE OF TENNESSEE, COUNTY OF _MADISON_ _____⎬ s.s.

Personally appeared before me, the undersigned, a notary public for said County and State, _ROBERT CHROMIZKY AND JUDY CHROMIZKY, A MARRIED COUPLE_ _____
_____ with whom I am personally acquainted  (or proved to me on the basis of satisfactory evidence), and who acknowledged that _SHE_ executed the within instrument for the purposes therein contained.

Witness my hand and official seal, at office in _JACKSON, TN_ _____ on _12/20/07_.

My commission expires: _12/21/2009_          _____  WOOD
          Notary Public TAWANIKA MCKINNEY WOOD

This instrument prepared by
_AMERICAN GENERAL FINANCIAL SERVICES, INC_ _____

DEED
OF TRUST

to

AMERICAN GENERAL
FINANCIAL SERVICES, INC.

TRUSTEE

TNA453 (10-17-04) Real Estate Deed of Trust

(Page 15 of 26)

**Copy**



Exhibit A

That certain lot or parcel of land lying and being in Madison County, Tennessee, and more particularly bounded and described as follows:

BEGINNING at the point of intersection of the North margin of Westwood Avenue with the West margin of Omar Circle; thence from the point of beginning and with the North margin of Westwood Avenue, West 75.00 feet to the Southeast corner of Lot 10 of aforesaid Subdivision; thence with the East line of said Lot 10, North 150.00 feet to the Southwest corner of Lot 9 of aforesaid; thence with the Souh line of said Lot 9, East 75.00 feet to the West margin of Omar Circle; thence with the West margin of Omar Circle, South 150.00 feet to the point of beginning. Being Lot 11, Block V, John H. Omar Subdivision, a plat of which appears of record in Plat Book 1 at page 211 in the Register's Office of Madison County, Tennessee, as surveyed by Reasons Engineering, License No. 508.

Subject to easements, restrictions, and covenants of record, if any.

This being the same property conveyed to Robert Chromizky from Thomas A. McLean & Deann L. McLean (f/k/a Deann L. Michael) herein by Deed dated 08/03/94 and recorded 08/08/94 in Deed Book 543 at Page 186 .

Tax ID: 66M-H-016



BK/PG:T1820/864-867

07020918

| 4 PGS : AL : TRUST DEED | | |
|---|---|---|
| TIMA BATCH: 57325 | | |
| 12/20/2007 - 02:12 PM | | |
| VALUE | | 75080.81 |
| MORTGAGE TAX | | 84.04 |
| TRANSFER TAX | | 0.00 |
| RECORDING FEE | | 20.00 |
| DP FEE | | 2.00 |
| REGISTER'S FEE | | 1.00 |
| TOTAL AMOUNT | | 107.04 |

STATE of TENNESSEE, MADISON COUNTY

**LINDA WALDON**
REGISTER OF DEEDS

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Prepared By: Douglas Keaton, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS
BLVD, COPPELL, TX 75019 1-888-480-2432
Madison, Tennessee
SELLER'S SERVICING          "CHROMIZKY"
Date of Assignment: July 21st, 2021
Assignor: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE
LOAN TRUST 2013-2, MORTGAGE-BACKED NOTES, SERIES 2013-2 BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE
FOR THE CIM TRUST 2021-NR2 MORTGAGE-BACKED NOTES, SERIES 2021-NR2 at 425 WALNUT STREET,
CINCINNATI, OH 45202

Executed By: ROBERT CHROMIZKY AND JUDY CHROMIZKY, A MARRIED COUPLE SPOUSES To: AMERICAN
GENERAL FINANCIAL SERVICES, INC.
Date of Deed of Trust: 12/20/2007 Recorded: 12/20/2007 in Book/Reel/Liber: T1820 Page/Image/Folio: 864 as
Instrument No.: 07020918 in the County of Madison, State of Tennessee.

Property Address: 721 WESTWOOD, JACKSON, TN 38301

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $75,080.81 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Deed of Trust.

Maximum principal indebtedness for Tennessee recording tax purposes is $0.00 (zero dollars). IN WITNESS
WHEREOF, the assignor has executed these presents the day and year first above written:

U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN
TRUST 2013-2, MORTGAGE-BACKED NOTES, SERIES 2013-2 BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT
On July 21st, 2021

By: _____
TSEDALE ALEMU, Vice-President

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2
STATE OF Texas
COUNTY OF Denton

On July 21st, 2021, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-2, MORTGAGE-BACKED NOTES, SERIES 2013-2 BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/07/2023  #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660
(This area for notarial seal)

BK/PG:T2166/1611-1613
21010711

3 PGS : ASSIGNMENT
CANDICE CREWS  228344 - 21010711
07/29/2021 - 09:56 AM
VALUE
MORTGAGE TAX              0.00
TRANSFER TAX              0.00
RECORDING FEE             15.00
DP FEE                    2.00
REGISTER'S FEE            2.00
TOTAL AMOUNT              19.00
STATE of TENNESSEE, MADISON COUNTY
ANGIE BYERS

REGISTER OF DEEDS

## Tennessee Certification of Electronic Document

I, _Angela B. Smith_ do hereby make oath that I am a licensed attorney and/or the custodian of the original version of the electronic document tendered for registration herewith and that this electronic document is a true and exact copy of the original document executed and authenticated according to law on _6/21/2021_ (date of document).

_Angela B. Smith_
Affiant Signature

_7/29/2021_
Date

State of _North Carolina_

County of _mecklenburg_

Sworn to and subscribed before me this _26th_ day of _July_, _2021_.

_____
Notary's Signature

MY COMMISSION EXPIRES:_____

NOTARY'S SEAL

DONNA B. FORNEY
NOTARY PUBLIC
Cabarrus County
North Carolina
My Commission Expires June 30, 2026

Book T2166 Page 1613

# E-recording Report of Recorded Documents

Itemized Fee View

**Prepared for:** Logs Legal Group LLP - Charlotte, NC (NCT9DQ)
**Cost center:** NCT9DQ
**Report generated:** 07/30/2021 07:06 AM MDT

## Documents Recorded

| NAME | TYPE | PG | ENTRY | RECORD DATE | | AMT | SF | TOTAL | PROCESSED |
|------|------|----|----|-------------|---|-----|----|----|-----------|
| **Madison County, TN** | | | | | | | | | |
| **Jul 29, 2021** | | | | | | | | | |
| **21-121426 AOM** | | | | | | | | | |
| 21-121426 AOM | *ASSIGNMENT* | 3 | E 210107|1 B 2166 P 1611 | 07/29/2021 10:56 AM EDT | No fee | 0.00 Submission Fee | 4.25 | 4.25 | 07/29/2021 |
| | | | | | Recording Fee | 15.00 | 0.00 | 15.00 | 07/29/2021 |
| | | | | | DP Fee | 2.00 | 0.00 | 2.00 | 07/29/2021 |
| | | | | | Registers Fee | 2.00 | 0.00 | 2.00 | 07/29/2021 |
| | | | | | | *19.00* | *4.25* | *23.25* | |
| | | | | | | 19.00 | 4.25 | 23.25 | |
| **Totals for Madison County, TN** | | | | | | 19.00 | 4.25 | 23.25 | |

## Recording Fee Totals

| COUNTY | RECORD DATE | AMT | SF | TOTAL |
|--------|-------------|-----|----|----|
| Madison County, TN | 07/29/2021 | 19.00 | 4.25 | 23.25 |
| **Totals for Madison County, TN** | | 19.00 | 4.25 | 23.25 |
| **Total of All Recording Fees** | | 19.00 | 4.25 | 23.25 |

**Document Count:** 1
**Package Count:** 1

**Questions Contact:**
Simplifile Support 800.460.5657, option 3
5072 North 300 West
Provo, UT 84604

| Motion For Relief Information | | | | |
| --- | --- | --- | --- | --- |
| _Post-Petition Ledger_ | | | | |
| Filed By: | ROBERT CHROMIZKY | Payment Changes | | |
| Case Number: | 2110080 | From Date | To Date | Total Amount | P&I Total |
| Filing Date: | 01/27/21 | | | $0.00 | |
| | | | | $0.00 | |
| Payments in POC: | | | | $0.00 | |
| First Post Due Date: | 3/4/2021 | | | $0.00 | |
| | | | | | |
| | | | | | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Payment Applied (P&I and Escrow) | Additional Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | LSAM BR Suspense Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |